**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**DEL RIO DIVISION**

| | | |
|---|---|---|
| **ARNULFO REYES, individually; et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **vs.** | § | **Causse No. 2:24-cv-00052-AM** |
| | § | |
| **JUAN MALDDONADO, an individual,** | § | |
| **et al.,** | § | |
| | § | |
| **Defendants.** | § | |

**DEFENDANT UVALDE CONSOLIDATED INDEPENDENT SCHOOL DISTRICT'S**
**MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT IN PART PURSUANT**
**TO FRCP 12(b)(1) AND MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)**

Defendant Uvalde Consolidated Independent School District ("UCISD") moves to dismiss Plaintiffs' Amended Complaint (ECF No. 4) pursuant to FRCP 12(b)(1) and 12(b)(6) and shows the Court the following:

## I.      NATURE AND STAGE OF PROCEEDING

1.      Plaintiffs, individually and as representatives of minors who were killed or injured in the May 24, 2022, shooting at Robb Elementary School filed suit against several defendants, including numerous Texas Department of Public Safety (TXDPS) employees, the Uvalde Consolidated Independent School District (UCISD), UCISD police officers and officials, and Motorola Solutions, Inc. ECF No. 4.

2.      Plaintiffs assert claims against UCISD under 42 U.S.C. §1983 for alleged violations of the Fourth and Fourteenth Amendments. ECF No. 4 at ¶¶ 6.1-10.5. Specifically, Plaintiffs first assert a claim against UCISD under the Fourth and Fourteenth Amendments for "failure to train/creation of policy." ECF No. 4 at ¶¶ 9.1-9.9. Second, Plaintiffs assert a claim against UCISD under the

Fourteenth Amendment for "special relationship and state created danger, failure to train/creation of policy." ECF No. 4 at ¶¶ 10.1-10.5. Plaintiffs seek recovery from UCISD for compensatory damages; punitive and exemplary damages; reasonable attorney's fees; and costs of suit and pre- and post-judgment interest. ECF No. 4 at ¶24.4.

## II.     STATEMENT OF THE ISSUES TO BE RULED UPON BY THE COURT

3.      Plaintiffs do not have standing to pursue claims on their own behalf under Section 1983 for injury or death sustained by their children.

4.      Plaintiffs cannot state a claim for violation of the U.S. Constitution because the injuries and deaths suffered were committed by a non-state actor, Salvador Ramos. The Fifth Circuit has recognized a single, narrow exception to the general rule from *DeShaney* that the government cannot be held liable for a failure to protect from the acts of non-state actors, and such exception requires a custodial relationship. Plaintiffs cannot allege facts which meet the requirements of the special relationship exception.

5.      Plaintiffs cannot state a claim for violation of the U.S. Constitution under the state-created danger rule because the Fifth Circuit has repeatedly and recently declined to adopt this exception to the *DeShaney* rule.

6.      Even if Plaintiffs could establish a constitutional violation, they cannot state a claim for municipal liability against UCISD via the *Monell* theory of municipal liability because they cannot show that an official policy of the UCISD Board of Trustees was the moving force behind their asserted injuries.

7.      Plaintiffs similarly cannot state a claim for municipal liability against UCISD via the failure to train theory of municipal liability because they cannot show a training policy that was adopted with deliberate indifference by the UCISD which was the moving force behind their injuries.

8.      Plaintiffs' claims against Mandy Gutierrez, Pete Arredondo, Adrian Gonzales, and Jesus Suarez in their official capacities must be dismissed because they are redundant of the claims against the UCISD and have no independent legal significance.

9.      Plaintiffs' requests for punitive or exemplary damages must be dismissed as to Defendant UCISD, as well as to Defendants Mandy Gutierrez, Pete Arredondo, Adrian Gonzales, and Jesus Suarez in their official capacities, as a matter of law.

### III.     MOTION TO DISMISS STANDARDS

10.     Motions filed under Rule 12(b)(1) allow a party to challenge the subject matter jurisdiction of the court to hear the case. Fed. R. Civ. P. 12(b)(1). When a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction is filed, the party seeking to litigate in federal court bears the burden of establishing jurisdiction. *Spencer v. Kemna*, 523 U.S. 1, 7, 118 S.Ct. 978, 983 (1998); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 2136 (1992); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Federal courts are courts of limited jurisdiction and must, at all times, have "statutory or constitutional power to adjudicate the case." *Clean COALition v. TXU Power,* 536 F.3d 469, 470 (5th Cir. 2008).

11.     In analyzing a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *See In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2007). However, the plaintiff must do more than recite the formulaic elements of a cause of action. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556-57 (2007). The plaintiff must plead specific facts, not mere conclusory allegations. *Tuchman v. DSC Comm'ns Corp.,* 14 F.3d 1061, 1067 (5th Cir. 1994). The court is not bound to accept "as true a legal conclusion couched as a factual allegation." *Twombly,* 550 U.S. at 678. Dismissal is appropriate if the complaint fails to plead "enough facts to state a clam to relief that

- 3 -

is plausible on its face." *Twombly,* 550 U.S. at 570.

## IV. ARGUMENTS AND AUTHORITY

### A.    Plaintiffs lack standing to assert individual claims on their own behalf under the U.S. Constitution.

12.    The Parent Plaintiffs lack standing to pursue any individual claims under the facts or legal theories asserted in their pleading, as the First Amended Complaint contains only alleged violations of the constitutional rights of their children. *See* ECF No. 4. To establish standing under Article III of the United States Constitution with respect to their individual claims, each Plaintiff must demonstrate that he or she has "suffered 'injury in fact,' that the injury is 'fairly traceable' to the actions of the defendant, and that the injury will likely be redressed by a favorable decision." *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). "The injury must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560, n. 1.

13.    The "Parent Plaintiffs" are "suing in their individual capacities." ECF No. 4 at ¶3.13. Federico Torres, Jr.; Azeneth Rodriguez; Sergio Garcia; Alfred Garza, III; Briana Ruiz; Mario Jimenez, Jr.; Rose Mary Moreno; Pricilla Rubio and Julio Rubio; Monica Arriola; and Christopher Salinas purport to assert claims individually as to the deceased and injured "Child Plaintiffs" against UCISD and other Defendants. ECF No. 4 at ¶¶3.1-3.13.  However, the Parent Plaintiffs do not assert that the actions of the UCISD deprived any of them personally of any protected rights; the allegations in the lawsuit are that their minor children's constitutional rights were violated by UCISD's response to Salvador Ramos's murderous actions, and that their children's constitutional rights were violated by UCISD's allegedly unconstitutional policies and training related to a school shooting incident. To the extent that the Parent Plaintiffs attempt to assert that their individual

constitutional rights were violated by officers restraining parents outside of the school, they failed to identify themselves as being restrained, any officers who did the alleged restraining, or whether or not they were employed by UCISD as opposed to the several other law enforcement agencies on the scene. *See* ECF No. 4. Moreover, all of the allegations against UCISD police officers refer to them being within the building during the response. *See id.*

14.     Federal courts have consistently held that a parent cannot assert claims under Section 1983 on their own behalf based solely on constitutional injuries to their child. Under § 1983, a plaintiff has standing in her individual capacity if she "clearly allege[s] an injury to [her] own personal constitutional rights." *Hooker v. Dallas Indep. Sch. Dist.*, 3:09-CV-1289-D, 2010 WL 4025877, at *5 (N.D. Tex. Oct. 13, 2010) (quoting *Trujillo v. Bd. of Cnty. Commis. of Santa Fe Cnty.*, 768 F.2d 1186, 1187 (10th Cir. 1985)). "It is well-established that parents lack standing to bring individual claims under § 1983 based solely upon deprivation of a child's constitutional rights." *Crozier v. Westside Cmty. Sch. Dist.*, No. 8:18CV438, 2018 WL 5298744, at *2 (D. Neb. Oct. 25, 2018) (citations omitted); *see also Barker v. Halliburton Co.,* 645 F.3d 297, 300 (5th Cir. 2011) ( "A third party may not assert a civil rights claim based on the civil rights violations of another individual.") Because the Parent Plaintiffs are not asserting any claims based on violations of their own constitutional rights, as opposed to their children's rights, they do not have standing to bring claims in their individual capacity, and such claims should be dismissed as a matter of law.

        **B.**        **Plaintiffs cannot show the requisite state action necessary to state a claim under the Fourteenth Amendment to the U.S. Constitution.**

15.     To state a § 1983 claim, a plaintiff must show that a person acting under color of state law deprived her of a right guaranteed by the Constitution or federal law. *See American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49-50 (1999); *Whitley v. Hanna,* 726 F.3d 631, 638 (5th Cir. 2013)

According to the well-pleaded facts in Plaintiffs' First Amended Complaint, former student Salvador Ramos, a private actor, injured and killed the Robb Elementary students and teachers. While indeed horrific, this situation cannot support a constitutional claim because it lacks the requisite state action. "Although the right to life is obviously an interest of constitutional dimension, its deprivation alone cannot give rise to a claim under section 1983." *Dollar v. Haralson County,* 704 F.2d 1540, 1543 (11th Cir. 1983). "Courts have declined to recognize as a general rule a person's affirmative right to state protection, even when such protection may be necessary to secure life, liberty, or property interests." *Walton v. Alexander,* 20 F.3d 1350, 1354 (5th Cir. 1994).

16.     As a general rule, the state's failure to protect an individual from private violence does not violate the Constitution. *DeShaney v. Winnebago County Dep't. of Social Servs.,* 489 U.S. 189, 195, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). There is only one exception to this rule that is recognized by the Fifth Circuit: the "special relationship" test. *Robinson v. Webster Cty., Mississippi,* 825 F. App'x 192, 195 (5th Cir. 2020).

17.     The Fifth Circuit has consistently held that substantive due process is implicated only in "certain limited instances" where "the state's affirmative restraint on an individual's liberty, 'through incarceration, institutionalization, or other similar restraint of personal liberty,' not its failure to act, is the compulsion required to create a 'special relationship' and invoke the protection of the Due Process Clause." *Walton v. Alexander*, 44 F.3d 1297, 1302 (5th Cir. 1995) (citing *DeShaney,* 109 S. Ct. at 1000). The Fifth Circuit has specifically held that there is no special relationship between a school district and its students, even where compulsory attendance is required. *Doe ex rel. Magee v. Covington County Sch. Dist. ex rel. Keys*, 675 F.3d 849 (5th Cir. 2012)(en banc).

18.   Similar cases regarding the response to mass shooter incidents have consistently found that constitutional claims against first responders and their employers are not cognizable, even where they asserted the "custodial" relationship exception to *DeShaney. See, e.g. Vielma v. Gruler,* 347 F. Supp. 3d 1122 (M.D. Fla. 2018), aff'd, 808 F. App'x 872 (11th Cir. 2020); *Vielma*, 808 F. App'x 872 (11th Cir. 2020); *L.S. ex rel. Hernandez v. Peterson,* 982 F.3d 1323, 1327 (11th Cir. 2020). Here, Plaintiffs argue that because the first responders formed a perimeter *outside* of the classrooms, when Ramos was already *inside* the classroom, they in effect took the children in the classroom into custody. The flawed logic of this argument is apparent because it is undisputed that Ramos was in the classroom too, negating any determination that the children also present were incarcerated, rather than being held hostage by a murderer. Accepting this argument would also require agreeing with the absurd result of its logical conclusion—that if the children and teachers were incarcerated, if one of them had attempted to escape, the first responders would have taken steps to force them to return to the classroom. No actions taken by the first responders restrained any of the students' freedom to act, and thus the "special" or "custodial" relationship is unavailing.

19.   Plaintiffs also assert a "state-created danger" theory of liability under § 1983. However, the Fifth Circuit has both consistently and recently declined to recognize the "state-created danger" theory of liability. *See, e.g. Fisher v. Moore,* 62 F.4th 912, 913 (5th Cir. 2023)("This circuit has never adopted a state-created danger exception to the sweeping 'no duty to protect' rule."); *Joiner v. United States,* 955 F.3d 399, 407 (5th Cir. 2020); *Doe ex rel. Magee*, 675 F.3d at 864; *Whitley v. Hanna*, 726 F.3d 631, 640 n. 5 (5th Cir. 2013) ("This court has not adopted the state-created-danger theory….and [Plaintiff] wisely has disclaimed reliance on it."). Thus, because Plaintiffs cannot establish the requisite state action to support their claims asserted pursuant to § 1983, and they should be dismissed.

### C.    Plaintiffs cannot state a claim for unlawful seizure.

20.    Plaintiffs cannot state a claim for unlawful seizure because none of the students or teachers was subjected to any type of physical force, much less excessive force, nor are there any well-pleaded facts that plausibly articulate that any of the teachers or students believed that they were not free to leave because of the first responders outside rather than the murderer within the classroom. *See* ECF No. 4. "The Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.' [T]he 'seizure' of a 'person,' which can take the form of 'physical force,' or a 'show of authority' that 'in some way restrain[s] the liberty' of the person." *Torres v. Madrid*, 141 S. Ct. 989, 995 (2021) (quoting *Terry v. Ohio*, 392 U. S. 1, 19, n. 16 (1968)); see also *California v. Hodari D.,* 499 U.S. 621 (1991). "At the adoption of the Fourth Amendment, a 'seizure' was the 'act of taking by warrant' or 'of laying hold on suddenly.'" Torres, 141 S. Ct., at 995 (citation omitted).  "A seizure requires the use of force with an intent to restrain. Accidental force will not qualify. Nor will force intentionally applied for some other purpose satisfy the rule." *Id.* at 998 (emphasis in original) (citation omitted). "[T]he appropriate inquiry is whether the challenged conduct objectively manifests an intent to restrain…." *Id*. (emphasis in original). "Nor does the seizure depend on the subjective perceptions of the seized person." *Id*. at 999. Plaintiffs' well-pleaded facts indicate that all of the UCISD first responders' actions were aimed toward addressing the shooter and none that indicate intentional force with intent to restrain the teachers or students. ECF No. 4.

21.    When considering whether a seizure occurred, a court must assess "in view of all of the circumstances surrounding the incident, [whether] a reasonable person would have believed that he was not free to leave." *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988). "Violation of the Fourth Amendment [for an Unlawful Seizure claim] requires an intentional acquisition of physical

control." *Brower v. Cnty. of Inyo,* 489 U.S. 593, 598 (1989). "When a person 'has no desire to leave for reasons unrelated to the police presence, the coercive effect of the encounter can be measured better by asking whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter'" *Id*. (quoting *United States v. Flowers,* 6 F.4th 651, 655 (5th Cir. 2021)). Here, there are no allegations that any of the students or teachers were arrested, subjected to any physical force, or ordered or told not to leave the classrooms or otherwise impeded from doing so by the first responders; instead, all of the factual allegations show that they did not leave because of the shooter. *See* ECF No. 4.

### D.    Plaintiffs cannot show school district liability under 42 U.S.C. § 1983.

22.    Even if Plaintiffs could establish a constitutional violation, their claims still fail because they cannot plead facts showing constitutional liability attributable to UCISD. A local governmental entity, such as a school district, can only be held liable under Section 1983 for acts for which it is actually responsible. *See Monell v. Department of Social Services of New York*, 436 U.S. 658, 691 (1978). To establish governmental liability under Section 1983, in addition to a cognizable constitutional injury, a plaintiff must also show: (1) a policymaker with final policymaking authority; (2) an official policy; and (3) a violation of constitutional rights whose "moving force" is the policy or custom. *Doe ex rel. Magee*, 675 F.3d at 866. Thus, "a governmental entity cannot be held liable solely because it employs a tortfeasor—or, in other words, a governmental entity cannot be held liable under § 1983 on a *respondeat superior* theory." *Doe on Behalf of Doe v. Dallas Indep. Sch. Dist.,* 153 F.3d 211, 214 (5th Cir. 1998)(5th Cir. 1998) (citing *Monell,* 436 U.S. at 691).

23.    Even assuming a constitutional violation occurred, Plaintiffs' Section 1983 claims against UCISD fail because they cannot establish that an "official policy or custom" of UCISD "was a

cause in fact of the deprivation of rights inflicted." *Leffall v. Dallas Indep. Sch. Dist.,* 28 F.3d 521, 525 (5th Cir.1994). An "official policy or custom" of a school district is: (1) "a policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the district, or by an official to whom the district has delegated policy-making authority;" or (2) "a persistent, widespread practice of district officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents district policy." *Eugene v. Alief Indep. Sch. Dist.,* 65 F.3d 1299, 1304 (5th Cir.1995). Actual or constructive knowledge of such custom must be attributable to the governing body of the district or to an official to whom that body had delegated policy-making authority. *Id.*

24.     Whether a particular official has "final policy-making authority" is a question of state law. *St. Louis v. Praprotnik,* 485 U.S. 112, 128 (1988). It is settled law that, in Texas, only the board of trustees has final policy-making authority in an independent school district. TEX. EDUC. CODE §11.151; *Jett v. Dallas Indep. School Dist.,* 7 F.3d 1241, 1245 (5th Cir. 1993). Superintendents of schools, school administrators, principals, teachers, and school staff, including chiefs of police, do not have final policy-making authority in a school district. *See Jett*, 7 F.3d at 1245; *Teague v. Texas City Indep. Sch. Dist.,* 386 F.Supp.2d 893, 896 (S.D. Tex. 2005), *aff'd* 185 Fed. Appx. 355 (5th Cir. 2006); *Ali v. La Marque ISD Educ. Found., Inc.,* No. CIV.A. G-05-276, 2005 WL 1668146, at *3 (S.D. Tex. July 14, 2005).

25.     Here, Plaintiffs assert, in conclusory fashion, that because Arredondo was the Chief of Police for UCISD, by simply virtue of that position, he was a final policymaker for the school district. ECF at ¶¶ 9.2, 9.6. However, as a matter of state law, Arredondo is not the final policymaker for UCISD, and therefore he is not responsible for the official policies and procedures of the school district. *See Jett,* 109 S.Ct. 2702, 2724. A school district's board of trustees is the

final policymaker. *Id.*; TEX. EDUC. CODE §11.151. By statute, the board of trustees, not the chief

of police, "shall determine the law enforcement duties of peace officers, school resource officers,

and security personnel." Tex. Educ. Code Ann. § 37.081(d). Similarly, the "board of trustees of

the district shall determine the scope of the on-duty and off-duty law enforcement activities of

school district peace officers." *Id.* at (e). Finally, the "chief of police of the school district police

department shall be accountable to the superintendent and shall report to the superintendent." *Id.*

at (f). Plaintiffs have not alleged any facts showing that UCISD delegated policymaking authority

to Arredondo such that he became the final policymaker for the district's law enforcement

activities. *See* ECF No. 4. Their Section 1983 claims should be dismissed because they cannot

establish the policymaker element of their claim against UCISD. *See Ali*, No. CIV.A. G-05-276,

2005 WL 1668146, at *3 (S.D. Tex. July 14, 2005).

26.     UCISD may not be held liable for any "policy" developed by school officials other than its

Board of Trustees. *Teague,* 386 F.Supp.2d at 896. Moreover, the only well-pleaded facts as to an

official policy assert that UCISD had adopted an active shooter policy, in compliance with Texas

state law, but that Arredondo allegedly disregarded the policy in responding to the shooting. ECF

No. 4 at ¶ 9.7. To hold a local government unit liable under Section 1983 for the misconduct of its

employees, a plaintiff must initially allege that an official policy or custom "was a cause in fact of

the deprivation of rights inflicted." *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th

Cir.1994). Here, Plaintiffs' well-pleaded factual allegations make clear that they are relying on a

*respondeat superior* theory of liability which is not cognizable under Section 1983. To state a

claim for which a school district could be held liable § 1983, a plaintiff must point to more than

the actions or inactions of an employee; they must identify a policymaker with final policymaking

authority and a policy that is the "moving force" behind the alleged constitutional violation. *Meadowbriar Home for Children, Inc., v. Gunn*, 81 F.3d 521, 532-33 (5th Cir.1996).

27.     Plaintiffs furthermore cannot show governmental liability based on a widespread custom or practice; isolated events are not sufficient to establish custom. *Ramie v. City of Hedwig Vill., Tex.,* 765 F.2d 490, 494 (5th Cir. 1985); *Gagne v. City of Galveston*, 671 F. Supp. 1130, 1135 (S.D. Tex. 1987) *aff'd,* 851 F.2d 359 (5th Cir. 1988). Plaintiffs provide no well-pleaded factual allegations of substantially similar incidents occurring at UCISD to establish the requisite widespread custom or practice necessary to sustain their claims; thus, they should be dismissed, as a matter of law. See ECF No. 4.

**E.     Plaintiffs have failed to state a claim under the § 1983 failure to train/supervise theory of liability.**

28.     Plaintiffs similarly cannot show municipal liability under a failure to train/supervise theory of liability. "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson,* 563 U.S. 51, 61, 131 S. Ct. 1350, 1359 (2011). However, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* "A policy of inadequate training is far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*." *Id.* (citing *Oklahoma City v. Tuttle,* 471 U.S. 808, 822–823, 105 S.Ct. 2427 (1985) (plurality opinion)(internal citations and alterations omitted). An inadequate training program, *after* it is shown to be an official policy or custom of which the policymaking body has knowledge, may only support a § 1983 claim where: (1) the entity's training policy was inadequate, (2) it was deliberately indifferent in adopting its training policy, and (3) the inadequate

training policy *directly caused* the constitutional violation.[1] *Kitchen v. Dallas Cty.,* 759 F.3d 468, 484 (5th Cir. 2014); *Malone v. City of Fort Worth, Texas,* 297 F. Supp. 3d 645, 655 (N.D. Tex. 2018). "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick,* 536 U.S. at 61 (quoting *Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197 (1989)). The Supreme Court has made clear that "[a] less stringent standard of fault for a failure-to-train claim would result in *de facto respondeat superior* liability on municipalities." *Id.* at 61-62 (internal citations and alterations omitted).

29.      Here, Plaintiffs put forth no allegations that Arredondo, Suarez, or Gonzales were not properly trained. *See* ECF No. 4. Plaintiffs makes no claim, nor allege any facts demonstrating that UCISD was deliberately indifferent to deficiencies in its training program, nor can they, as only "when municipal policymakers are on *actual or constructive notice* that a particular omission in their training program causes municipal employees to violate citizens' constitutional rights, the municipal entity may be deemed deliberately indifferent if the policymakers choose to retain that program." *Id* (emphasis added). Thus, Plaintiffs' allegations fail to demonstrate any of the elements of their failure to train/supervise theory of liability, and it should be dismissed.

30.      Moreover, a pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate that a governmental entity knew of deficiencies in their training programs and nonetheless acted with deliberate indifference for purposes of failure to train. *Id* (quoting *Board of Comm'rs of Bryan Cty. v. Brown,* 520 U.S. 397, 409, 117 S.Ct. 1382

---

[1] "Like the standards applicable to a failure to train, to hold a local government liable for failure to supervise a plaintiff must show '(1) the municipality's supervision was inadequate, (2) the municipality's policymaker was deliberately indifferent in supervising the subordinates, and (3) the inadequate supervision directly caused the plaintiff's injury.'" *Malone,* 297 F. Supp. 3d at 662 (*Clyce v. Hunt Cty.*, 515 Fed.Appx. 319, 323 (5th Cir. 2013))(citations omitted).

(1997)). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick,* 563 U.S. at 62.  Plaintiffs have not pleaded well-pleaded facts demonstrating a pattern of similar violations at the hands UCISD employees, instead again incanting legal conclusions of "a pattern and practice" and thus cannot establish that UCISD was on actual or constructive notice of omissions in their training or supervision. *See* ECF No. 4. Whether analyzed under *Monell* municipal liability or a failure to train/supervise theory, Plaintiffs' well-pleaded facts fail to show any basis for liability against UCISD.

      **F.**      **Plaintiffs' § 1983 claims against any UCISD employee or official in his or her official capacity are redundant and should be dismissed as a matter of law.**

31.      Plaintiffs have asserted their § 1983 claims against Defendants Mandy Gutierrez and Pete Arredondo in their official and individual capacities. ECF No. 4 at ¶¶ 4.11, 4.12.[2] It is established that suing a government official in his official capacity is another way of pleading against the entity of which the official is an agent. *Kentucky v. Graham,* 473 U.S. 159, 165 (1985); *Monell v. Dep't. of Social Services of the City of New York,* 436 U.S. 658, 690 n. 55. (1978). An official capacity suit is to be treated as a suit against the governmental entity itself. *Kentucky*, 473 U.S. at 170-71; *U.S. ex rel. Adrian v. Regents of Univ. Of Cal.,* 363 F.3d 398, 402 (5th Cir. 2004). Official capacity claims coterminous with § 1983 claims against a governmental entity are not only redundant, but they also have no independent legal significance. *See Bluitt v. Houston Indep. Sch. Dist.,* 236 F.Supp.2d 703, 727 (S.D.Tex. 2002). Accordingly, the Court should dismiss the §1983 claims against Arredondo and Gutierrez in their official capacities because such claims are redundant and

---

[2] Plaintiffs assert their claims against Adrian Gonzales and Jesus Suarez in their individual capacities only. ECF No. 4 at ¶¶ 4.13. To the extent that Plaintiffs intend to assert their claims against Gonzales and/or Suarez in their official capacities, such claim are similarly redundant, of no legal significance, and must be dismissed.

of no independent legal significance, as they are the same as the § 1983 claims for alleged violation of constitutional rights that Plaintiffs are pursuing against UCISD. *See* ECF No. 4; *see also Jenkins v. Bd. of Educ. of Houston Indep. Sch. Dist.,* 937 F. Supp. 608, 613 (S.D. Tex. 1996).

### G.   Plaintiffs' request for punitive damages must be dismissed

32.   Plaintiffs' request for punitive damages (ECF No. 4 at 91-93) for alleged constitutional violations by UCISD as well as any of its employees or officials in their official capacities should be dismissed. *Gil Ramirez Group, L.L.C. v. Houston Indep. Sch. Dist.,* 786 F.3d 400, 412 (5th Cir. 2015)("The Supreme Court has held that a municipality's liability for § 1983 damages does not thereby subject it to punitive damages, from which government entities were historically immune. *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 263, 101 S.Ct. 2748, 2758, 69 L.Ed.2d 616 (1981).").

### V. CONCLUSION AND PRAYER

Defendant UCISD respectfully prays that the Court grant this motion to dismiss the Parent Plaintiffs' individual claims for lack of jurisdiction, pursuant to FRCP 12(b)(1), and further prays that the Court grant this motion to dismiss all of Plaintiffs' remaining claims against UCISD for failure to state a claim upon which relief can be granted, pursuant to FRCP 12(b)(6), with prejudice. Defendant UCISD prays for any and all relief to which it has shown itself justly entitled.

Respectfully submitted,

*/s/ Katie E. Payne*
Katie E. Payne
State Bar No. 21888700
Federal No. 979301
E-Mail: kpayne@wabsa.com

D. Craig Wood
State Bar No. 24071347
Federal ID No. 1786856

E-Mail: cwood@wabsa.com

**WALSH GALLEGOS KYLE
ROBINSON & ROALSON P.C.**
1020 NE Loop 410, Suite 450
San Antonio, Texas 78209
Telephone: (210) 979-6633
Facsimile: (210) 979-7024

**ATTORNEYS FOR DEFENDANT UCISD**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on June 25, 2024, I electronically filed the foregoing document

with the Clerk of the Court using the CM/ECF system which will send electronic notification of

such filing to all counsel of record.

<u>/s/ Katie E. Payne</u>
Katie E. Payne