UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

| | | |
|---|---|---|
| ARNULFO REYES, et al., *Plaintiffs* | § § § | |
| v. | § § | C.A. No. 2:24-cv-00052 |
| JUAN MALDONADO, et al., *Defendants*. | § § § § | |

**DEFENDANTS ADRIAN GONZALES AND J.J. SUAREZ'S
REPLY TO PLAINTIFFS' OMNIBUS OPPOSITION
TO DEFENDANTS' MOTIONS TO DISMISS**

Defendants Adrian Gonzales ("Gonzales") and J.J. Suarez ("Suarez") (collectively, the "Defendants") file this Reply to Plaintiffs' Omnibus Opposition to Defendants' Motions to Dismiss, as follows:

**A.    Plaintiffs have not overcome Defendants' entitlement to qualified immunity.**

Under current law, in all federal circuits, "[o]nce an officer invokes the qualified immunity defense, the plaintiff must rebut it by establishing (1) that [each] officer violated a federal statutory or constitutional right and (2) that the unlawfulness of the conduct was 'clearly established at the time.'" *Rich v. Palko*, 920 F.3d 288, 294 (5th Cir. 2019) (internal citations omitted). Qualified immunity is a valid and enforceable defense—supported by over fifty years of precedent—despite Plaintiffs' assertion that qualified immunity lacks a legal basis. And once asserted, it is up to Plaintiffs to plead "specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm [Plaintiffs have] alleged and that defeat a qualified immunity defense with equal specificity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). Plaintiffs' allegations fall short of meeting this standard

Notwithstanding the arguments raised in Plaintiffs' response, Defendants are entitled to qualified immunity because (1) Plaintiffs do not allege sufficient facts suggesting either Defendant

individually violated Plaintiffs' constitutional rights, (2) Plaintiffs' special relationship and state-created danger theories of liability have never been recognized by the Fifth Circuit and are therefore not clearly established law, and (3) Plaintiffs do not point to any clearly established law that suggests Defendants' actions constitute an unlawful seizure under the Fourth Amendment.

> **1.   There are no facts from which the Court could reasonably infer that either Defendant individually violated Plaintiffs' constitutional rights.**

A § 1983 plaintiff "must plead that each Government-official defendant, through the official's *own individual actions*, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (emphasis added). And when multiple defendants are alleged to have committed constitutional violations, the plaintiff must allege with specificity what each defendant did to commit those violations, and the court should analyze each claim of qualified immunity separately. *Babb v. Dorman*, 33 F.3d 472, 479 (5th Cir. 1994); *see also Darden v. City of Fort Worth, Tex.*, 880 F.3d 722, 731 (5th Cir. 2018) ("In cases where the defendants have not acted in unison, qualified immunity claims should be addressed separately for each individual defendant.") (internal citations and quotations omitted).

Further, to the extent Plaintiffs seek to hold either Defendant liable as a "supervisor," it is well established that a supervisor cannot be held liable under § 1983 on the basis of respondeat superior. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 n. 58 (1978). "Rather, the misconduct of the subordinate must be affirmatively linked to the action or inaction of the supervisor." *Southard v. Tex. Bd. of Criminal Justice*, 114 F.3d 539, 550 (5th Cir. 1997); *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987) (holding that, under section 1983, supervisory officials are not liable for the actions of subordinates based on any theory of vicarious liability).

> **i.   J.J. Suarez**

The individual allegations against Suarez are practically non-existent. The amended complaint alleges that Suarez was a UCISD-PD Officer and that he entered Robb Elementary School at

approximately 11:41 a.m. [Dkt. No. 4 at ¶ 4.14].[1] These meager allegations do not plausibly suggest that Suarez *individually* violated Plaintiffs' constitutional rights or that any of his actions or inactions are directly linked to anyone else's alleged misconduct. *Monell*, 436 U.S. at 694; *Southard*, 114 F.3d at 550; *Thompkins*, 828 F.2d at 303.

> ii. **Adrian Gonzales**

Other than claiming that he arrived at the parking lot at 11:31 a.m., Plaintiffs do not plead any specific facts relating to Gonzales's actions or inactions as an *individual*. Instead, Plaintiffs group their allegations against Gonzales with allegations against Chief Arredondo and other officers. [*See, e.g.,* Dkt. No. 4 at ¶¶ 5.109–5.104]. As a matter of law, these types of generalized allegations cannot demonstrate that Gonzales *individually* violated Plaintiffs' constitutional rights. *Babb*, 33 F.3d at 479; *Darden*, 880 F.3d at 731.

> **2. Plaintiffs' special relationship theory of liability fails as a matter of law, and cannot defeat Defendants' entitlement to qualified immunity.**

Nothing in the Omnibus Response changes the fact that the special relationship theory of liability does not apply in the public-school context. *See, e.g., Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 857–58 (5th Cir. 2012); *Priester v. Lowndes County*, 354 F.3d 414 (5th Cir. 2004); *Doe v. Sabine Parish Sch. Board*, 24 F.3d 655 (5th Cir. 1998); *Johnson v. Dallas Indep. Sch. Dist.*, 38 F.3d 198 (5th Cir. 1995); *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 526 (5th Cir. 1994); *Doe v. Columbia-Brazoria Indep. Sch. Dist.*, 855 F.3d 681 (5th Cir. 2017); *Estate of Causey v. Miles*, 2015 WL 13742550, at *5 (N.D. Tex. Nov. 19, 2015); *Estate of Montana Lance v. Lewisville Indep. Sch. Dist.*, 2012 WL 12875690, at *5 (E.D. Tex. May 11, 2012), *aff'd*, 743 F.3d 982 (5th Cir. 2014).

---

[1] Although the Omnibus Response suggests that Suarez "failed to immediately neutralize the Shooter" and "failed to direct Defendant Arredondo to do so," these allegations appear nowhere in the amended complaint. The amended complaint is likewise devoid of any facts that would support Plaintiffs' contention that Suarez can be held liable for the constitutional violations of others based on some sort of "supervisor" theory of liability. For example, Plaintiffs do not even allege that Suarez *was* a supervisor, much less any facts explaining whom he allegedly supervised, or how any alleged supervisory failures manifested deliberate indifference to Plaintiffs' constitutional rights.

Although Plaintiffs argue that this case is different because the police officers allegedly took custody of the students and teachers by barricading them in with the Shooter [*see* Dkt. No. 35 at p. 26], the cases Plaintiffs rely on for this proposition are cases where the state had **full time** custody of the individuals at issue. *See Walton v. Alexander*, 20 F.3d 1350, 1355 (5th Cir. 1994), *reh'g en banc*, 44 F.3d 1297 (5th Cir. 1995) (school for the deaf had 24-hour custody of the student); *Griffith v. Johnston*, 899 F.2d 1427, 1439 (5th Cir. 1990) (TDHS had full custody of the children). These cases are distinguishable because the police officers sued in this case did not have full custody of the students and teachers. *Doe ex rel. Magee*, 675 F.3d at 857–58 ("Public schools do not take students into custody and hold them there against their will in the same way that a state takes prisoners, involuntarily committed mental health patients, and foster children into its custody."); *see also Villalon v. City of McAllen*, 2022 WL 1547759, at *6 (S.D. Tex. Apr. 7, 2022), *report and recommendation adopted*, 2022 WL 1540425 (S.D. Tex. May 16, 2022) (finding no special relationship when police officer alighted on plaintiff as he lay on the ground right before he was shot by a private individual). Additionally, the amended complaint generally alleges that the police officers who responded to Robb Elementary School attempted to confine the Shooter, and that the Shooter—*not* the police officers—held the teachers and students against their will. Defendants' presence on the scene does not change that indisputable fact.

Regardless, Plaintiffs do not point to a single case in which a court has found a special relationship existed under similar facts and circumstances. That is proof enough that the special relationship theory of liability is not clearly established law under these circumstances. Defendants are therefore entitled to qualified immunity. *Doe on Behalf of Doe v. Dallas Indep. Sch. Dist.*, 534 F. Supp. 3d 682, 691 (N.D. Tex. 2021).

### 3. Plaintiffs' state-created danger theory of liability fails as a matter of law and cannot defeat Defendants' entitlement to qualified immunity.

Plaintiffs cannot overcome Defendants' entitlement to qualified immunity by relying on a theory of liability that has never been adopted by the Fifth Circuit or the United States Supreme Court. *See Fisher v. Moore*, 73 F.4th 367, 369 (5th Cir. 2023) ("This circuit has never adopted a state-created danger exception to the sweeping 'no duty to protect' rule. And a *never*-established right cannot be a *clearly* established one."). Moreover, the Fifth Circuit has already rejected Plaintiffs' argument that the state-created danger theory of liability is clearly established simply because other circuits have recognized it. *Id.* at 373 ("'[T]he mere fact that a large number of courts had recognized the existence of a right to be free from state-created danger in some circumstances ... is insufficient to clearly establish' the theory of liability in our circuit.") (citing *McClendon v. City of Columbia*, 305 F.3d 314, 330 (5th Cir. 2002)). The Fifth Circuit reasoned that, "despite widespread acceptance of the [state-created danger] doctrine [in other circuits], the circuits were not unanimous in [the doctrine's] 'contours' or its application." *Id.* (citing *Morrow v. Meachum,* 917 F.3d 870, 879–80 (5th Cir. 2019)). The Fifth Circuit has also stated that "[t]he reluctance of this court . . . to embrace some version of the state-created danger theory despite numerous opportunities to do so suggests that, regardless of the status of this doctrine in other circuits, a reasonable officer in this circuit would, even today, be unclear as to whether there is a right to be free from 'state-created danger.'" *McClendon,* 305 F.3d at 332 n.12. Accordingly, Defendants' entitlement to qualified immunity remains intact.

And even if the Fifth Circuit had recognized the state-created danger theory of liability, Plaintiffs still do not plead facts that satisfy the elements of their claim because Plaintiffs do not plausibly allege that the Defendants created a dangerous situation that did not already exist by the active Shooter. *See Doe ex rel. Magee*, 675 F.3d at 857–58. Additionally, "[i]t is not enough for the Plaintiffs to allege that the Defendants knew of a risk to a class of people that included the Plaintiffs . . . Rather, to fall within the scope of the state-created danger theory as we have explained it, the

Plaintiffs must allege that the Defendants were aware of the danger to the Plaintiffs *themselves*." *Cancino v. Cameron Cnty., Tex.*, 794 Fed. App'x. 414, 417 (5th Cir. 2019) (emphasis added). Yet, Plaintiffs do not allege any facts suggesting that the Defendants were specifically aware of an immediate danger to the individual Plaintiffs.

Plaintiffs' claims premised on the state-created danger theory of liability must be dismissed based on qualified immunity.

### 4. Plaintiffs have not stated a valid Fourth Amendment claim.

"A Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement . . . but only when there is a governmental termination of freedom of movement *through means intentionally applied*." *Brower v. County of Inyo*, 489 U.S. 593, 596–97 (1989) (emphasis in original). And the "[v]iolation of the Fourth Amendment requires… [that the] detention or taking itself must be willful." *Id.* at 596. These principles ensure that every "negligent taking of a life" does not become "a constitutional deprivation" and have been applied consistently to foreclose Fourth Amendment claims in the context of the accidental deaths of innocent bystanders. *Young v. City of Killeen*, 775 F.2d 1349, 1353 (5th Cir. 1985).

Although Plaintiffs allege that Defendants "seized" the students and teachers because they were confined to their classrooms, the amended complaint alleges that it was the active Shooter (as opposed to the police officers who responded to the scene) who held the students and teachers hostage in the classroom. [Dkt. No. 4 at ¶ 5.87]. The officers targeted the active Shooter only—not the innocent bystanders. [*Id.* at ¶ 5.115]. In other words, the facts that (1) Suarez arrived on the scene and (2) Gonzales allegedly attempted to confine the active Shooter by taking position in the hallway outside Classrooms 111 and 112 do not amount to an unlawful seizure because these alleged actions do not indicate that either Defendant used physical force or a show of authority to *intentionally*

confine the students and teachers. Simply put, it was the Shooter—*not* the Defendants or other law enforcement officers—who restricted the Plaintiffs' movements.

Moreover, Plaintiffs can only overcome Defendants' entitlement to qualified immunity if they can show that, at the time and under the circumstances of the challenged conduct, *all* reasonable officers would have realized the conduct was prohibited by the Fourth Amendment. *Dudley v. Angel*, 209 F.3d 460–62 (5th Cir. 2000). If reasonable officers could differ on the lawfulness of the Defendants' actions, the Defendants are entitled to qualified immunity. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Yet, Plaintiffs allege that "a total of 376 law enforcement officers responded to the active shooter event" and that "every single officer knew and understood" that that the students and teachers were confined in the West building with the active Shooter [*see* Dkt. No. 4 at ¶¶ 5.124, 5.252], which means that Plaintiffs' own allegations demonstrate that a reasonable officer could have believed that Defendants' actions were lawful under the circumstances present at the time since they "all" responded in a similar manner.

Plaintiffs have failed to state a valid claim under the Fourth Amendment and Defendants are entitled to qualified immunity.

**B.**  **The Parent Plaintiffs' attempt to recover damages as guardians must be dismissed for lack of subject-matter jurisdiction because their claims are barred by the election of remedies provision of the Texas Tort Claims Act.**

Plaintiffs Torres, Rodriquez, Garcia, Garza, Ruiz, Jimenez, Moreno, Rubio, Arriola, and Salinas ("the Parent Plaintiffs") argue that they have standing because they are seeking damages as guardians. [Dkt. No. 35 at pp. 40–41]. To the extent the Parent Plaintiffs are bringing individual claims, Defendants reassert their argument that Parent Plaintiffs lack individual standing to assert constitutional claims under 42 U.S.C. § 1983 because their claims are predicated on allegations that Defendants violated the constitutional rights of others—not their own personal constitutional rights. *Coon v. Ledbetter*, 780 F.2d 1158, 1160 (5th Cir. 1986). Nevertheless, the Parent Plaintiffs' claim for

survivorship or wrongful death damages must be dismissed pursuant to the Texas Tort Claims Act (the "Act"). The Act "encourages, and in effect mandates, plaintiffs to pursue lawsuits against the governmental units rather than their employees." *Tex. Adjutant Gen.'s Office v. Ngakoue (TAGO)*, 408 S.W.3d 350, 352 (Tex. 2013). To that end, the Act contains an election of remedies provision, which states:

> The filing of a suit under this chapter against a governmental unit constitutes an irrevocable election by the plaintiff and **immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter** . . . an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed. . .

TEX. CIV. PRAC. & REM. CODE § 101.106(a), (f) (emphasis added). Consequently, if a governmental employee is named in his official capacity or is sued for acts allegedly committed in the general scope of his employment, then the tort claims have been effectively asserted against the governmental entity and the individual employee must be dismissed. *Molina v. Alvarado*, 463 S.W.3d 867, 870–71 (Tex. 2015); *Franka v. Velasquez*, 332 S.W.3d 367, 382 (Tex. 2011); *see also Tex. Adjutant Gen.'s Office v. Ngakoue (TAGO)*, 408 S.W.3d 350, 357 (Tex. 2013) (holding that claims based on conduct within the scope of employment is not a suit against the employee; it is "in all but name only, a suit against the governmental unit."). By requiring the plaintiff to make an irrevocable election to either sue the government or the employee individually, the Act "narrows the issues for trial and reduces delay and duplicative litigation costs." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 657 (Tex. 2008).

Immediate dismissal of any wrongful death or other state law tort claims against Defendants is required because (i) the amended complaint alleges that the Defendants were employees of the Uvalde Consolidated Independent School District; (ii) Plaintiffs' claims for tort damages are subject to the Act; and (iii) Plaintiffs asserted the same claims against UCISD. *Univ. of Tex. Health Science Ctr.*

*at Houston v. Crowder*, 349 S.W.3d 640, 648–49 (Tex. App.—Houston [14th Dist.] 2011, no pet.); *Hudspeth County v. Ramirez*, 675 S. W. 3d. 103, 110 (Tex. App.—El Paso, 2000, no pet.).

**C.      Plaintiffs are not entitled to recover damages under either theory of bystander liability because they have not alleged the requisite elements of their claims.**

The amended complaint alleges that the Parent Plaintiffs are entitled to damages because they themselves were bystanders [*see* Dkt. No. 4 at ¶¶ 13.2, 16.2, 17.2, 18.2, 19.2, 20.2, 22.2], but Plaintiffs appear to introduce a new theory of liability in their Omnibus Response by arguing that the Defendants are liable as alleged bystanders. [*See* Dkt. No. 35 at p. 33]. The Court should not consider this new theory of liability because it is improper to raise new allegations and causes of action in response to a motion to dismiss. *Young v. City of Houston*, 599 Fed. App'x. 553, 555 (5th Cir. 2015); *Yager v. Stroman*, 2020 WL 2615759, at *10 (W.D. Tex. May 22, 2020) (refusing to consider bystander liability claim because it was not present in plaintiff's second amended complaint).

But even assuming Plaintiffs' new theory of liability is properly before the Court, both bystander theories fail.

**1.      Defendants are not subject to bystander liability under Section 1983.**

Even if Plaintiffs could introduce this new theory of liability, it still fails as a matter of law because (as previously addressed) Plaintiffs cannot demonstrate an underlying constitutional violation, and because Plaintiffs have otherwise failed to plausibly allege that Suarez or Gonzales *knew* that other officers were violating Plaintiffs' constitutional rights. *Ripley v. Bexar Cnty., Tex.*, 2022 WL 22839767, at *8 (W.D. Tex. Mar. 3, 2022) ("Plaintiff has failed to state claims against the Deputies based on violations of his Fourth and First Amendment rights. Accordingly, the Court finds that Plaintiff's bystander liability claim against the Deputy Defendants fails and should be [dismissed]."); *Griffin v. City of Sugarland, Tex.*, 787 Fed. App'x. 244, 245 (5th Cir. 2019) ("Griffin also fails to identify any settled authority that would have put the defendant officers on notice that the use of force alleged in this case violated Griffin's constitutional rights. Because his excessive force claim fails because there was no

violation of his constitutional rights, Griffin's bystander liability theory also fails."). Moreover, mere presence at the scene is insufficient to render an officer legally responsible for constitutional violation under Section 1983 based on bystander-liability. *Whitley v. Hanna*, 726 F.3d 631, 646–47 (5th Cir. 2013). Accordingly, Plaintiffs' new bystander liability claim should be dismissed.

### 2. The Parent Plaintiffs are not entitled to bystander relief under Section 1983.

"[T]here is no constitutional right to be free from witnessing . . . police action." *Grandstaff v. Borger*, 767 F.2d 161, 172 (5th Cir. 1985). Bystander claims "can only succeed when the officer directs the force toward the bystander—that is to say, when the bystander is not really a bystander." *Harmon v. City of Arlington, Tex.*, 16 F.4th 1159, 1168 (5th Cir. 2021). Accordingly, Plaintiffs' original bystander theory of liability also fails as a matter of law because "there is no § 1983 cause of action for bystanders who witness police actions but are not, themselves, the target of police action." *Khansari v. City of Houston*, 14 F. Supp. 3d 842, 869 (S.D. Tex. 2014).

## CONCLUSION

Defendants Adrian Gonzales and J.J. Suarez respectfully request that the Court dismiss the claims against them with prejudice.

Respectfully submitted,

**THOMPSON & HORTON LLP**

*/s/ James E. Byrom*
**JAMES E. BYROM**
State Bar No. 03568100
jbyrom@thompsonhorton.com
**STEPHANIE A. HAMM**
State Bar No. 24069841
shamm@thompsonhorton.com
**ALEXA GOULD**
State Bar No. 24109940
agould@thompsonhorton.com

3200 Southwest Freeway, Suite 2000<br>
Houston, Texas 77027<br>
(713) 333-6144 – Telephone

**ATTORNEYS FOR ADRIAN GONZALES AND J.J. SUAREZ**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing instrument has been served in accordance with the Federal Rules of Civil Procedure via the Court's electronic filing system on October 18, 2024.

*/s/ James E. Byrom*
JAMES E. BYROM